UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALISA SIMMONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:13-cv-1389-M |
| | § | |
| TARRANT COUNTY 9-1-1 DISTRICT and | § | |
| GREGORY PETREY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are the Rule 12(c) Motion for Judgment on the Pleadings [Docket Entry #22], and the Motion for Partial Summary Judgment [Docket Entry #37], filed by Defendants Tarrant County 9-1-1 District (the "District") and Gregory Petrey. For the reasons stated below, the Rule 12(c) Motion for Judgment on the Pleadings is **GRANTED**, and the Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**.

I.   BACKGROUND

Plaintiff, Alisa Simmons, is an African American woman who has been employed by the District since 1996, and who holds the title of Public Marketing Manager.[1] The District is a public entity organized under Title 9, Subtitle B of the Texas Health & Safety Code, which provides for local administration of emergency communications. The Board of Managers ("the Board") for the District is charged by law with "managing the [D]istrict." Texas H&S Code Section 772.107(a)-(c). The Board is to appoint a Director of the District who supervises the District's operations subject to the limitations imposed by the Board. H&S Code Section 772.108. Defendant Petrey has been the Director of the District since 2006.

---

[1] Plaintiff describes her position as the "Public Marketing Manager" of the District, while Defendants describe the position as the District's "Public Education Manager".

Plaintiff alleges disparate treatment and discriminatory conduct by Petrey, who allegedly changed District policy, thereby preventing her from receiving full tuition reimbursement for her master's degree, and dealt harshly with her when she questioned the new policy. Compl. ¶¶ 16-17. Plaintiff asserts that thereafter, Petrey began to give her negative performance reviews in an attempt to either justify her termination or to create a hostile work environment to prompt her to quit. Compl. ¶ 18. She also alleges that after Petrey gave her permission to make contracts with vendors before her proposed budget was approved by the Board, he wrote her a letter of reprimand when she did so, when white employees engaged in similar conduct were not so reprimanded. Compl. ¶¶ 19-20. Plaintiff further asserts that in the summer of 2010, when she attempted to fill a vacant support staff position, Petrey, unlike the way he treated white employees, asked her for an "excruciating [level of] detail[,]" and did not permit her to fill the position. Compl. ¶¶ 24-25. Plaintiff alleges general "unreasonable scrutiny" in the form of "close[] monitor[ing]," "micro-management," and "aggressive[] manage[ment]" from Petrey, and others, that white employees did not face.

On September 13, 2010, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") (the "2010 Charge"), alleging that these acts constituted unlawful harassment and discrimination due to race. Defs.' Mot. Summ. J., App. at 115. On the same date, she supplemented the 2010 Charge, citing her compensation and the size of her office as examples of race discrimination. Defs.' Mot. Summ. J., App. at 115. On November 9, 2010, the EEOC notified Plaintiff that her charge was dismissed, and that if she wished to file a lawsuit, she had to do so within ninety days of receiving the notice. Defs.' Mot. Summ. J., App. at 17-19. Plaintiff did not file a lawsuit within this ninety-day period. Compl. ¶ 30.

Plaintiff asserts that thereafter, Petrey retaliated against her, falsely claiming Plaintiff had

hired contractors in violation of IRS regulations and the Texas Constitution, and complaining about the expense for these contractors, unlike the way he treated white employees. Compl. ¶¶ 31, 33-34.

On September 25, 2012, Plaintiff filed a second charge with the EEOC (the "2012 Charge") alleging she had been subject to harassment, retaliation, and continued discrimination in compensation. Defs.' Mot. Summ. J., App. at 122 (2012 Charge). On the same date, Plaintiff submitted to the EEOC responses to an intake questionnaire which reiterated many of the incidents described in the 2010 Charge. *See* Defs.' Mot. Summ. J., App. at 33, 40-42. On January 3, 2013, Plaintiff received a second Notice of Dismissal and right-to-sue letter from the EEOC. Defs.' Mot. Summ. J., App. at 20.

On April 4, 2013, Plaintiff filed suit, asserting claims for discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the United States and Texas Constitutions. On January 23, 2014, Defendants filed a Rule 12(c) Motion for Judgment on the Pleadings, seeking dismissal of Plaintiff's Title VII claim against Petrey, and on Plaintiff's section 1981 and constitutional claims against both Defendants. Plaintiff did not respond to this Motion. On April 14, 2014, Defendants filed a Motion for Partial Summary Judgment, seeking dismissal of Plaintiff's Title VII claims against both Defendants.

## II. LEGAL STANDARD

### A. Rule 12(c) Motion for Judgment on the Pleadings

Courts review a Rule 12(c) motion by determining, upon a review of the pleadings, whether the plaintiff stated a valid claim for relief. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must construe the pleadings liberally in evaluating a Rule 12(c) motion. *Brittan Commc'ns Int'l Corp.*

*v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Twombly*, 550 U.S. at 570). It must provide "more than an unadorned accusation devoid of factual support," but need not include detailed factual recitations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although courts must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . factual allegation[s]" are not given such deference. *See Twombly*, 550 U.S. at 555.

**B.      Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where the summary judgment movant will not have the burden of proof at trial, the movant bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 250; *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

4

For determination of a summary judgment motion, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625 (citation omitted). A mere "scintilla of evidence" will not meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (en banc) (per curiam). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). The court is not to assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts," and is to grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little,* 37 F.3d at 1075. The Court is not required to sift through the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 164 (5th Cir. 2006); *Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2013 WL 1721961, at *2 (N.D. Tex. Apr. 22, 2013) (Fitzwater, C.J.); *Tranman, Inc. v. Griffin,* No. 3:11-CV-1046-M, 2013 WL 944502, at *3-4 (N.D. Tex. Mar. 12, 2013) (Lynn, J.).

### III.  ANALYSIS

A.  **Rule 12(c) Motion for Judgment on the Pleadings**

    1.  **Title VII Claim Against Petrey**

Plaintiff sues Petrey, as well as the District, under Title VII. The Fifth Circuit has held that there is no individual liability for employees under Title VII. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir. 1999). While Title VII's definition of the term employer includes an agent of the employer, Congress's purpose in so providing was merely to import *respondeat superior* liability into Title

VII. *Smith*, 298 F.3d at 448-49.  In other words, actions of the individual supervisory employee might trigger liability for himself in his official capacity, as well as liability for the employer, but not in the supervisor's individual capacity. *Id.*; *Grant v. Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir. 1994); *Wesley v. Scobee Foods, Inc.*, No. 3:12-CV-1836-K, 2013 WL 3324092, at *1 (N.D. Tex. June 28, 2013) (Kinkeade, J.). Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity. *Smith*, 298 F.3d at 448-49; *Indest*, 164 F.3d at 262. Thus, Plaintiff's Title VII claim against Petrey is **DISMISSED with prejudice**. *See Indest*, 164 F.3d at 262; *Shabazz v. Commc'ns Workers of Am./Tex. State Emps. Union*, No. 3:02-CV-2698-M, 2003 WL 22388570, at *6 (N.D. Tex. Sept. 30, 2003) (Lynn, J.).

## 2. 42 U.S.C. § 1981

In *Jett v. Dallas Independent School District,* 491 U.S. 701, 731 (1989), the Supreme Court held that the exclusive remedy for enforcement of rights secured by section 1981, with respect to state actors, is a cause of action brought pursuant to section 1983. *See also Harris v. City of Balch Springs*, No. 3:11-CV-2307-L, 2012 WL 4512490, at *14 (N.D. Tex. Sept. 30, 2012) (Lindsay, J.). The Civil Rights Act of 1991 amended 42 U.S.C. § 1981 by adding subsection (c), which states that the rights protected by section 1981 "are protected against impairment by *nongovernmental* discrimination and impairment under color of state law." 42 U.S.C. § 1981(c) (emphasis added). This amendment is explicitly directed to nongovernmental entities. It did not overrule or abrogate the Supreme Court's holding in *Jett*. *Oden v. Oktibbeha Cnty., Miss.,* 246 F.3d 458, 463 (5th Cir. 2001) ("We are persuaded that the conclusion reached in *Jett* remains the same after Congress enacted the 1991 amendments."). State actors may be sued only under section 1983, not section 1981. *Oden*, 246 F.3d at 463; *Harris*, 2012 WL 4512490, at *14.

The District is a state actor. The Texas Health & Safety Code provides that the District "is a public body corporate and politic, exercising public and essential governmental functions and having all the powers necessary or convenient to carry out the purposes and provisions of this subchapter, including the capacity to sue or be sued." H&S Code Section 772.113(a). As the Director of the District, Petrey is also a state actor. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor[.]"); *Hernandez v. Tex. Dept. of Transp.*, No. C-08-33, 2008 WL 706700, at *1 n.2 (S.D. Tex. Mar. 14, 2008).

Because Defendants are state actors, the exclusive remedy against them for rights secured by section 1981 is a cause of action under section 1983. Thus, Plaintiff fails to state a cause of action under section 1981. *See Newsome v. Harris County,* No. H-12-1938, 2013 WL 285543, at *6 (S.D. Tex. Jan. 24, 2013) ("Individual municipal employees are not liable under § 1981.") (citing *Oden*, 246 F.3d at 464); *Simmons v. Mesquite Indep. Sch. Dist.*, No. 3:03-CV-2665-M, 2004 WL 1171189, at *1 (N.D. Tex. May 26, 2004) (Lynn, J.). Therefore, Plaintiff's claims for race discrimination under section 1981 are **DISMISSED with prejudice**.

### 3. United States and Texas Constitutional Claims

Defendants move to dismiss any claim that purportedly arises under the U.S. Constitution or the Constitution of the State of Texas. Plaintiff's only reference to constitutional claims in the Complaint is that "the action arises under . . . the U.S. Constitution; and, the Constitution of the State of Texas." 42 U.S.C. § 1983 is the exclusive means for asserting liability against any person who, acting under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 727 (5th Cir. 2009). Because Plaintiff does not assert a

7

claim under section 1983, Defendants are entitled to judgment on any federal constitutional claims.

In *City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex. 2007), the Texas Supreme Court held that there was no implied private right of action for damages against governmental entities for violations of the Texas Constitution. *See also City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148-49 (Tex. 1995) (noting that there is no authority suggesting that the Texas Constitution "was intended to provide an implied private right of action for damages for the violation of constitutional rights"); *Valadez v. United Indep. Sch. Dist.*, No. L-08-22, 2009 WL 37485, at *1 (S.D. Tex. Jan. 6, 2009) (holding that tort damages are not recoverable for violations of the Texas Constitution). Thus, Plaintiff cannot assert claims against Defendants under the United States Constitution or the Constitution of the State of Texas.

Plaintiff conceivably could amend her Complaint to assert a section 1983 claim, but the Court's Scheduling Order, of September 25, 2013, set the deadline for Plaintiff to amend her pleadings at November 15, 2013, and the case is set for trial on August 18, 2014. Therefore, the Court will not permit such an amendment.

**B.      Motion for Partial Summary Judgment**

Title VII of the Civil Rights Act prohibits discrimination against "any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Before an individual can pursue a Title VII claim in federal court, she must first exhaust her available administrative remedies. *See Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378–79 (5th Cir. 2002). Title VII requires that a complainant must first file a charge with the EEOC within 180 days (or 300 days when the complainant has initially instituted proceedings with a state or local

agency) after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). If the EEOC dismisses a claim, it then issues a right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). Once the EEOC has issued a right-to-sue letter, the complainant has ninety days in which to file a Title VII action in federal court. *Id.* The Fifth Circuit has held that the ninety-day statute of limitations for Title VII actions is to be strictly construed. *Taylor*, 296 F.3d at 379.

Defendants seek dismissal of Plaintiff's Title VII claims against both Defendants on the grounds that Plaintiff failed to file a civil action within ninety days of receiving her Notice of Dismissal and right-to-sue letter concerning the 2010 Charge, and her claims in the 2012 Charge are the same as those asserted in the 2010 Charge. Plaintiff maintains the complaints made in the 2010 Charge concern continuing issues that affect each pay period, and thus summary judgment on her claims would be improper.

Plaintiff concedes that the allegations in the 2012 Charge are similar to those in the 2010 Charge, but maintains that the "actions which were alleged in [the] 2010 [Charge] have continued and that by their continuing nature they have continued to cause and have a negative impact on [P]laintiff's compensation." Pl.'s Resp. Mot. Summ. J. 2. Plaintiff appears to invoke the continuing violations doctrine, an equitable device that tolls the statute of limitations for filing an EEOC complaint under certain circumstances. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116–117 (2002). It relates to claims which "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts . . . may not be actionable on [their] own." *Id.* at 115. Plaintiff argues that her Complaint presents continuing issues of discrimination which stem from prior conduct, and thus her claims concerning that conduct are not time barred by the ninety-day statute of limitations for claims asserted in the 2010 Charge.

In *Woods v. Lancaster Independent School District*, 834 F. Supp. 2d 512, 516 (N.D. Tex. 2011) (Boyle, J.), the court considered a similar argument concerning a claim for sex discrimination. Woods's charge filed at the EEOC asserted that she was harassed by a male co-worker and eventually terminated because of her sex. *Id.* at 513-14. In August 2010, she received a right-to-sue letter from the EEOC. *Id* at 514. In October 2010, Woods filed a second charge with the EEOC, asserting that an internal complaint about her was forwarded to the Texas Education Agency in retaliation for her previous EEOC charge. *Id.* In January 2011, Woods received a second right-to-sue letter from the EEOC. *Id.* She filed a lawsuit within ninety days of receipt of that second letter, asserting claims for sex discrimination and retaliation. *Id.*

The defendant in *Woods* argued that the sex discrimination claim was barred because Woods's suit was filed more than ninety days after she received the first right-to-sue letter. *Id.* at 515. The court in *Woods* held that even if the plaintiff could demonstrate a continuing violation, the doctrine would not toll the ninety-day limitation after receipt of a right-to-sue letter, as contrasted with the 180 or 300-day limitation between the date of a discriminatory act's occurrence and the filing of a charge with the EEOC. *Id* at 517 (citing *Nat'l R.R. Passenger Corp.,* 536 U.S. at 116–117). The court noted that while the Fifth Circuit had yet to speak to the issue, other circuits had "unequivocally" found that the continuing violations doctrine did not apply to the ninety-day limitation. *Id.* (citing *Copeland v. Rosen,* 25 F. App'x 17, 19 (2d Cir. 2001); *Austion v. City of Clarksville,* 244 F. App'x 639, 648 (6th Cir. 2007) (quoting *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 461 (6th Cir. 2001)); *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959, 962 (10th Cir. 1991).

The court in *Woods* acknowledged that the continuing violations doctrine was meant to ensure that claims comprised of a series of separate acts that constituted one unlawful

employment practice were actionable, but because the EEOC's right-to-sue letter had already informed Woods that her sex discrimination claim was actionable, the facts showed that Woods had simply failed to timely act. *Id.*

This Court agrees with Judge Boyle's reasoning in *Woods*. While the Fifth Circuit has still not spoken to this issue, since *Woods* was decided at least one other circuit has reached the same conclusion. *See, e.g.*, *Loubriel v. Fondo del Seguro del Estado,* 694 F.3d 139, 144 (1st Cir. 2012). Plaintiff concedes that at least some of her claims in this action are based on the same acts described in the 2010 Charge, but asserts that there is a "continuing issue regarding pay which stems from the prior conduct[.]" Pl.'s Resp. Mot. Summ. J. 3-4.

Plaintiff argues that the Ledbetter Fair Pay Act of 2009 (the "Ledbetter Act") requires that courts determine whether there is an alleged unlawful employment practice based on a compensation disparity attributable to gender or race. The Ledbetter Act does not toll the ninety-day limitation for filing suit after receipt of a right-to-sue letter. *See Mackie v. Post, Buckley, Schuh & Jernigan, Inc.*, No. SA-09-CV-737-XR, 2011 WL 864800, at *2 (W.D. Tex. Mar. 9, 2011); *Simmons v. Tex. Water Dev. Bd.*, 2010 WL 4595804, *4 (W.D. Tex. 2010).

The 2012 Charge details incidents also alleged in the 2010 Charge. Plaintiff may not "base [her] lawsuit on events described in a charge of discrimination, no matter how old, if a subsequent charge of discrimination referred to that previous charge [because such a rule] would violate the purpose of the ninety-day limit . . . 'to keep claims fresh.'" *Maddox v. CHCA E. Houston, LP*, No. H-04-4395, 2006 WL 2729293, at *4 (S.D. Tex. Sept. 25, 2006) (quoting *Zambuto v. Am. Tel. & Tel. Co.*, 544 F.2d 1333, 1335 (5th Cir. 1977)). Plaintiff's incorporation by reference of stale claims into her 2012 Charge does not refresh them nor provide a basis for recovery on these claims.

Therefore, Plaintiff's claims arising from the incidents described in her 2010 Charge are **DISMISSED with prejudice** as time-barred. *See Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir. 2009); *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 444-46 (W.D. Tex. 2013). Although the Court may consider events claimed in the 2010 Charge as background evidence, those claims cannot be the basis for a recovery. *Nat'l R.R. Passenger Corp*, 536 U.S. at 113.

The parties do not dispute that Plaintiff filed the instant suit within the requisite time limit to sue pursuant to the 2012 Charge. The Court thus must now determine the extent to which Plaintiff's claims in the 2012 Charge are duplicative of the claims in the 2010 Charge. *See Prewitt*, 927 F. Supp. 2d at 444-46 (W.D. Tex. 2013); *Sparks v. Lowes Home Ctr., Inc.*, 341 F. Supp. 2d 671, 674 (E.D. Tex. 2004). Plaintiff asserts that the 2012 Charge "alleg[es] similar allegations as those in [the 2010 Charge,] but also alleg[es] that those continuing actions which were alleged in 2010 have continued and that by their continuing nature they have continued to cause and have a negative impact on plaintiff's compensation." Pl.'s Resp. Mot. Summ. J. 2. The 2012 Charge contains allegations concerning conduct by the Defendant that allegedly occurred after the filing of the 2010 Charge. *See* Compl. ¶¶ 31-34; Def.'s Mot. Summ. J., App. at 38, 41-42, 50, 68, 117. Accordingly, Plaintiff may pursue her Title VII claims over conduct occurring after the filing of the 2010 Charge that are contained in her 2012 Charge, but not conduct that occurred before the 2010 Charge was filed. Every allegedly discriminatory payment made to Plaintiff after the 2010 Charge is a new actionable claim.

### IV.   CONCLUSION

For the reasons stated above, Defendants' Rule 12(c) Motion for Judgment on the Pleadings is **GRANTED**, and Defendants' Motion for Partial Summary Judgment is

**GRANTED in part** and **DENIED in part**. Plaintiff's Title VII claim against Petrey, and her claims under section 1981, the United States Constitution, and the Constitution of the State of Texas are **DISMISSED with prejudice**. Summary judgment is granted on all claims asserted, or that could have been asserted, in Plaintiff's 2010 Charge, but she may pursue her claims for other matters in the 2012 Charge, including claims for inequitable compensation post-dating the 2010 Charge.

    **SO ORDERED**.

    July 22, 2014.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS